UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| FLOZELL ADAMS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:09-CV-1860-B |
| | § | |
| ROOSEVELT BARNES, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiff Flozell Adams' Complaint to Vacate Arbitration Award (doc. 1), filed September 30, 2009. Defendant Roosevelt Barnes, Jr. filed an Amended Response and Counter Motion to Confirm Arbitration Award (doc. 8) on October 23, 2009. For the reasons set forth below, the Court **DENIES** Plaintiff's Motion to Vacate Arbitration Award. In so doing, the Court **GRANTS** Defendant's Counter Motion (doc. 8) and **CONFIRMS** the arbitration award.

## I.

## BACKGROUND[1]

*A. Factual Background*

Plaintiff Flozell Adams ("Adams"), is a professional football player formerly with the Dallas Cowboys. (Br. in Supp. of Mot. to Vacate ¶ 1.) He brings this action against Defendant Roosevelt Barnes ("Barnes"), his former agent who handled Adams' contract negotiations with the Cowboys

---

[1]The Court has drawn the facts from Plaintiff's Brief in Support of Motion to Vacate Arbitration (doc. 2). When possible, the Court has utilized the facts upon which the parties agree. Otherwise, the Court has indicated which of the assertions are claimed by the party to be true.

for several years beginning when Adams was drafted by the organization in 1998. *Id.* at ¶ 2. The two have twice been to arbitration over agency fees Barnes claims he is due from Adams. *Id.* at ¶ 8, 28. Both arbitrations were resolved in Barnes' favor. Adams now seeks to vacate the second of the two arbitration awards, alleging that the arbitrator was partial and engaged in misconduct during the proceeding. *Id.* at 45-48, 54. The details of the two arbitrations provide a helpful starting point for this vacatur analysis.

Adams and Barnes are parties to the National Football League ("NFL")/National Football League Player's Association ("NFLPA") Collective Bargaining Agreement, and the NFLPA Regulations Governing Contract Advisors ("Agent Regulations"). (Br. in Supp. of Mot. to Vacate ¶ 8.) These agreements govern the actions, obligations, rules and prohibitions regarding teams, players and agents of the NFL. *Id.* The Agent Regulations specify that arbitration is the exclusive method for resolving disputes between an NFL player and his agent. *Id.*

In accordance with the Agent Regulations, Barnes first filed for arbitration on April 25, 2005, claiming agent fees owed to him for the 1999 through 2004 football seasons. *Id.* at ¶ 10. Roger P. Kaplan ("Kaplan") conducted the trial in Dallas, Texas and sent several letters regarding the impending trial to the parties involved. *Id.* at ¶¶ 11-12. However, Adams contends that he was unaware of his right to counsel under the Collective Bargaining Agreement until immediately prior to the commencement of the trial. *Id.* at ¶ 13. Kaplan denied Adams' request for continuance to seek counsel and initiated the trial instead. *Id.* at ¶ 14. Kaplan issued an award in favor of Barnes on October 24, 2006, which encompassed Barnes' fees for eight seasons. *Id.* at ¶ 17. Adams' alleged several prejudicial and incorrect rulings during the arbitration, which included: (1) an award that included amounts due beyond the six-month statute of limitations period, (2) a record indicating

that Adams was never served with the grievance, (3) the denial of a brief continuance to seek counsel immediately prior to the arbitration, (4) the allowance of an oral amendment by Barnes to add a claim for agent fees for the 2006 season not yet earned, and (5) an award of three percent of Adams' salary for one of the eight seasons when the Agent Regulations cap an agent's fees at two percent. *Id.* at ¶ 16. Barnes filed a complaint seeking confirmation of the arbitration award under the Federal Arbitration Act. *Id.* at ¶ 18. After Adams neglected to answer, Barnes obtained a default judgment. *Id.* at ¶¶ 19-20. Adams still refused to pay and filed a Rule 60(b) motion to challenge the award based upon alleged deficiencies, mistakes, errors, misapplications, and disregard of the controlling agreement in the arbitrator's ruling. *Id.* at ¶ 23. The District Court denied Adams' Rule 60(b) motion. *Id.* at ¶ 24.

Barnes filed a second claim for arbitration on March 20, 2008 for agent fees owed for the 2007 football season. *Id.* at ¶ 28. Kaplan was selected again as arbitrator by the NFLPA. *Id.* at ¶ 16. Adams sent a letter to Kaplan and the NFLPA legal counsel requesting that Kaplan recuse himself as arbitrator based on perceived errors from the first arbitration. *Id.* at ¶¶ 32-33. Both parties declined, and the second arbitration was conducted on April 21, 2009. *Id.* at ¶ 33. Kaplan awarded Barnes contract advisor fees for the entire 2007 football season. *Id.* at ¶ 82.

B. *Procedural Background*

On September 30, 2009, Adams filed a Motion to Vacate Arbitration Award (doc. 1) for the second arbitration on two grounds. First, Adams maintains that Kaplan was partial and biased based on the errors from the first arbitration in 2006. (Br. in Supp. of Mot. to Vacate ¶¶ 45-48.) Adams argues that Kaplan's refusal to recuse himself as arbitrator in the first arbitration constituted error justifying vacatur of Barnes' award. *Id.* at 49-53  Alternatively, Adams argues that Kaplan engaged

in misconduct during the arbitration by making mistakes in applying the Agency Regulation. *Id.* at 54. He contends that the arbitration was time-barred based on the statute of limitations. *Id.* at 56-74. Adams argues that since there is no evidence of a valid and express refusal by Adams to pay Barnes, the case was not ripe for adjudication and should have been dismissed. *Id.* at 75. Barnes filed an amended response on October 23, 2009 with a counter-motion to confirm the arbitration award. (Am. Resp. to Movant's Mot. to Vacate 1.)

After considering the evidence and applicable legal authority, the Court **DENIES** Plaintiff's Motion to Vacate Arbitration Award. In doing so, the Court also **GRANTS** Defendant's Counter Motion (doc. 8) and **CONFIRMS** the arbitration award.

## II.

## LEGAL STANDARD

The Court's review of an arbitration award is "extraordinarily narrow." *Antwine v. Prudential Bache Sec., Inc.*, 899 F.2d 410, 413 (5th Cir. 1990). Thus, the award should be upheld if it is "'rationally inferable from the letter or purpose of the underlying agreement.'" *Saipem Am. v. Wellington Underwriting Agencies Ltd.*, 335 Fed. App'x 377, 379-80 (5th Cir. 2009) (quoting *Am. Laser Vision, P.A. v. Laser Vision Inst., L.L.C.*, 487 F.3d 255, 258 (5th Cir. 2007)). The Federal Arbitration Act ("FAA") identifies limited cases where an arbitration award may be vacated, which include:

> (1) where the award was procured by corruption, fraud, or undue means;
> (2) where there was evident partiality or corruption in the arbitrators . . . ;
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them

> that a mutual, final, and definite award upon the subject matter submitted was not made.

Federal Arbitration Act, 9 U.S.C. § 10 (2006). The Supreme Court in *Hall Street* held that these are the exclusive grounds for vacating an arbitration award under the FAA. *Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 585-86 (2008). Thus, a "manifest disregard of the law" is not independent grounds for vacating an arbitration award. *Id.*; *Citigroup Global Mkts., Inc. v. Bacon*, 562 F.3d 349, 353, 358 (5th Cir. 2009) (resolving that a manifest disregard for the law by the arbitrator no longer constitutes a basis for vacating awards under the FAA in the Fifth Circuit). Any alternative interpretation of the FAA "opens the door to the full-bore legal and evidentiary appeals that can 'render informal arbitration merely a prelude to a more cumbersome and time-consuming judicial review process.'" *Hall St. Assocs.*, 552 U.S. at 588 (quoting *Kyocera Corp. v. Prudential-Bache Trade Servs.*, 341 F.3d 987, 998 (9th Cir. 2003)). Having reviewed the applicable law, the Court now turns to the present motion.

### III.

### ANALYSIS

Adams argues that Kaplan was partial and guilty of misconduct during the arbitration. The Court will consider each of these contentions in turn.

*A. Partiality and Bias of the Arbitrator*

To establish partiality based on bias, "the party urging vacatur must produce specific facts from which a reasonable person would have to conclude that the arbitrator was partial to one party." *Householder Group v. Caughran*, 354 Fed. App'x 848, 852 (5th Cir. 2009) (quoting *Weber v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 455 F. Supp. 2d 545, 550 (N.D. Tex. 2006)). The plaintiff may

meet this "onerous burden" by demonstrating that the alleged partiality is "direct, definite, and capable of demonstration rather than remote, uncertain or speculative." *Id.* (internal quotations omitted). Furthermore, the party seeking vacatur must demonstrate more than the "mere appearance of bias." *Positive Software Solutions Inc. v. New Century Mortg. Corp.*, 476 F.3d 278, 283 (5th Cir. 2007) (internal quotations omitted). These "'standards for judicial intervention [have been] narrowly drawn to assure the basic integrity of the arbitration process. . . .'" *Kimco Birmingham LP v. Third Creek LLC*, No. 3:07-CV-1642-O, 2010 WL 147942 at *4 (N.D. Tex. Jan. 14, 2010) (quoting *Merit Ins. Co. v. Leatherby Ins. Co.*, 714 F.2d 673, 681 (7th Cir. 1983)). The unfavorable rulings that Adams alleges from the 2006 arbitration are insufficient to elevate claims of partiality during the second arbitration beyond a speculative level.

Courts generally have limited holdings of partiality to cases where the defendant maintained a substantial relationship with the arbitrator but not where the arbitrator made repeated rulings against the plaintiff or previously served as arbitrator for the parties. *See Commonwealth Coatings Corp. v. Continental Cas. Co.*, 393 U.S. 145, 146, 150 (1968); *Householder Group*, 354 Fed. App'x at 852; *Garfield & Co. v. Wiest*, 432 F.2d 849, 853-54 (2d Cir. 1970). For example, in *Householder Group*, the court held that the plaintiff's allegations that the arbitration panel refused to force the defendant to comply with discovery orders, the ruling was one-sided, the panel wanted the plaintiff to lose, and the award served to punish the plaintiff for filing excessive motions were insufficient to meet his "onerous burden" of proving that the arbitrator's partiality was "direct, definite and capable of demonstration." *Householder Group*, 354 Fed. App'x at 852 (internal quotations omitted). Similarly, in *Garfield*, the court held that repeated dealings with a particular arbitrator did not demonstrate the requisite bias to prove partiality. *Garfield & Co.*, 432 F.2d at 854. The court found

that the selection of the arbitrator was stipulated in the rules and constitution of the New York Stock Exchange, which was agreed to by its member firms. *Id.* at 853. Accordingly, member firms should have expected repeat dealings through the ordinary course of business. *Id.* at 854. By contrast, in *Commonwealth Coatings*, the court held that an arbitrator that provided repeated consulting services to the defendant was partial and therefore vacated the arbitration award. *Commonwealth Coatings*, 393 U.S. at 146, 150 (1968).

      Here, Adams has not met his burden of proving that Kaplan was partial. Instead, he presents only speculative allegations based on several perceived "one sided" rulings in a previous arbitration. *See Householder Group*, 354 Fed. App'x at 852 (holding that refusal to force discovery request and one sided rulings were insufficient to demonstrate partiality). Even assuming Kaplan erred in applying the law during the proceeding, such a failing cannot be considered direct, definite, or capable of demonstrating partiality. *See id.* Certainly, Kaplan's alleged missteps do not rise to level of partiality demonstrated when an arbitrator has a significant relationship with one of the parties. *See Commonwealth Coatings*, 393 U.S. at 146, 150. Furthermore, the mere fact that Kaplan served as the arbitrator in the 2006 proceeding does not support an inference of his bias in the second. It is not disputed that Legal Counsel for the NFLPA selected Kaplan as the arbitrator based on the NFL/NFLPA Collective Bargaining Agreement and the Agent Regulations. Similar to *Garfield*, the parties should have reasonably expected Kaplan as arbitrator in future proceedings since he is the only arbitrator employed by the NFLPA. *See Garfield & Co.*, 432 F.2d at 854. Consistent with the Court's narrow review of arbitration proceedings and a policy favoring arbitration, Adams has failed to meet his exacting burden of proving that Kaplan was partial during the 2007 arbitration proceeding.

*B. Misconduct by the Arbitrator*

The Court also declines to vacate the award based on misconduct by the arbitrator. In claiming misconduct, Adams argues that Kaplan disregarded the applicable statute of limitations period, which would have resulted in the 2007 arbitration being time barred. (Br. in Supp. of Mot. to Vacate ¶¶ 56-74.) Adams also contends that he never expressly refused to pay Barnes agency fees such that the case was not ripe for adjudication. *Id.* at ¶ 75. Both of these arguments rest on the misapplication of the black letter law by the arbitrator. As previously mentioned, the Fifth Circuit and the Supreme Court have held that a "manifest disregard for the law" is no longer an independent ground for vacating an arbitration award. *See Hall St.* 552 U.S. at 585-86; *Citigroup*, 562 F.3d at 353, 358. However, even under a "manifest disregard" standard, Adams' argument that the statute of limitations expired and that the case was not ripe for adjudication is based on technical interpretations of the Agency Regulation.[2] Accordingly, the stringent standard that the arbitrator "knew of the relevant [legal] principle, appreciated that this principle controlled the outcome of the disputed issue, and nonetheless willfully flouted the governing law by refusing to apply it" would still not be satisfied. *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 548 F.3d 85, 95 (2d Cir. 2008), *rev'd on other grounds*, 130 S. Ct. 1758 (2010). Therefore, the Court refuses to vacate the arbitration

---

[2] Adams argues that Kaplan misapplied the statute of limitations provision of the Agency Regulation that stipulates that the statute of limitations begins when the facts of the matter become known or reasonably should have become known to the grievant, whichever is later. (Br. in Supp. of Mot. to Vacate ¶ 57.) Kaplan interpreted this provision to the mean that the statute of limitations runs from the date a player refuses to pay the contract advisor. *Id.* at 56. Adams contends that the statute of limitations should have begun after the first payment was due but not paid or at the time that arbitration could have first been filed. *Id.* at 64. Additionally, Adams argues that the case is not ripe for adjudication because Barnes never sent him a "valid" invoice, although an "invalid" invoice was sent. *Id.* at 77-78.

award based on the alleged errors in applying the Agency Regulation. In light of the Court's ruling in Defendant's favor, the Court acknowledges but declines to address Defendant's arguments concerning timely service of the Motion to Vacate, collateral estoppel, and waiver of objection to partiality of the arbitrator.

## VI.

## CONCLUSION

For the reasons set forth in this order, Adams' Motion to Vacate Arbitration Award is **DENIED**. In denying Adams' motion, the Court also **GRANTS** Defendant's Counter Motion to Confirm (doc. 8) and **CONFIRMS** the arbitration award.

SO ORDERED.

DATED June 17, 2010

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE